UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE HAND PROMOTIONS INC., | Case No. C-10-4781 CW (JCS) |
| Plaintiffs, | **REPORT AND RECOMMENDATION RE MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS** |
| v. | **[Docket No. 19]** |
| JAMES MEOLA, ET. AL., | |
| Defendants. _____/ | |

## I. INTRODUCTION

In this action brought under the Federal Communications Act, Plaintiff Joe Hand Promotions Inc., ("Plaintiff") brings a Motion for Final Default Judgment ("Motion" or "Default Judgment Motion") against Defendants James Joseph Meola, John S. Oleson, Glenn Stevens Barker and James Robert Pilch, individually and d.b.a Roundtable Pizza; and Gloria, Inc., a business entity d.b.a. Roundtable Pizza ("Defendants") in which Plaintiff seeks default judgment and an award of statutory damages. Pursuant to Local Rule 7-1(b), the Court finds the Motion suitable for determination without oral argument. The hearing scheduled for April 29, 2011 is hereby VACATED. For the reasons stated below, it is recommended that the Motion be GRANTED.

## II. BACKGROUND

Plaintiff Joe Hand Promotions is a Pennsylvania corporation with its principal place of business located at 407 East Pennsylvania Avenue, Feasterville, Pennsylvania 19053. Complaint ("Compl.") ¶ 6. Plaintiff is a commercial distributor and licensor of sporting events. Compl. ¶ 12.

Plaintiffs filed the Complaint in this action on October 22, 2010. In the Complaint, Plaintiff alleges that James Joseph Meola, John S. Oleson, Glenn Stevens Barker, James Robert Pilch, and Gloria, Inc., are owners and/or operators or people with control and management of the commercial

1    establishment doing business as Roundtable Pizza operating at 730 Kains Avenue, San Bruno

2    California 92251.  *Id.* ¶¶ 7-11.

3        Plaintiff alleges that Joe Hand Promotions purchased the domestic commercial right to

4    broadcast "*Ultimate Fighting Championship 104: Lyota Machida v. Maricicio Rua*" (hereafter "the

5    Program"), which was telecast nationwide on Saturday October 24, 2009.  Compl. ¶ 13.  The

6    Program included the main event, along with undercard (preliminary) bouts, televised replay, and

7    color commentary, hereafter referred to as the "Program."  *Id*.  Pursuant to contract, Plaintiff entered

8    into sublicensing agreements with various commercial entities throughout North America, including

9    within the State of California, by which Plaintiff granted these entities the right to exhibit the

10   Program within their commercial establishments in the hospitality industry (*i.e.*, hotels, racetracks,

11   casinos, bars, taverns, restaurants and social clubs).  *Id.* ¶ 14.  Plaintiff further alleges that it has

12   expended "substantial monies marketing, advertising, promoting, administering, and transmitting the

13   Program to its customers."  *Id.* ¶ 15.

14       Plaintiff alleges that Defendants broadcast the program at their establishment, Roundtable

15   Pizza, with full knowledge that the Program was not to be intercepted, received or exhibited by

16   entities not authorized to do so.  *Id.* ¶¶ 16, 34.  Plaintiff alleges that "such unauthorized interception,

17   reception, publication, exhibition, divulgence, display and/or exhibition by each of the Defendants

18   was done willfully and for the purposes of direct and/or indirect commercial advantage and or

19   private financial gain."  *Id.* ¶ 17.

20       On the basis of these allegations, Plaintiff asserts four claims: (1) a violation of the

21   Communications Act of 1934, as amended, 47 U.S.C. § 605, *et seq*.; (2) a violation of The Cable &

22   Television Consumer Protection and Competition Act of 1992, as amended, 47 U.S.C. § 553, *et.*

23   *seq.*; 3) conversion; and 4) a violation of California Business and Professions Code § 17200 *et. seq*.

24   Plaintiff alleges that as a result of the Defendants' violations of federal and state law, Plaintiff is

25   entitled to statutory damages.  *Id.* at p. 9.

26       Defendants failed to file a responsive pleading or otherwise appear in this action.

27   Declaration of Thomas Riley ("Riley Decl.") ¶ 2.  The clerk entered default against the Defendants

28

pursuant to Rule 55(a) of the Federal Rules of Civil Procedure on January 24, 2011. *See* Docket No. 16.

Plaintiff now brings a motion for default judgment asking for an award of statutory damages in the amount of $110,000 and that damages be awarded for the tort of conversion in the amount of $875. Plaintiff also seeks attorneys' fees and costs as mandated by 47 U.S.C. § 605(e)(3)(b)(iii).

In support of the Default Judgment Motion, Plaintiff filed the declaration of investigator Mark Aal ("Aal") who observed the unlawful exhibition of the Program at the Defendants' establishment, Roundtable Pizza on October 24, 2009.

## III.   ANALYSIS

### A.   Legal Standard Regarding Entry of Default Judgment

Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, the court may enter a default judgment where the clerk, under Rule 55(a), has previously entered the party's default based upon failure to plead or otherwise defend the action. Fed. R. Civ. P. 55(b). Once a party's default has been entered, the factual allegations of the complaint, except those concerning damages, are deemed to have been admitted by the non-responding party. Fed. R. Civ. Proc. 8(b)(6); *see also Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) (stating the general rule that "upon default[,] the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true"). A defendant's default, however, does not automatically entitle the plaintiff to a court-ordered default judgment. *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986).

"Granting or denying a motion for default judgment is a matter within the court's discretion." *Landstar Ranger, Inc. v. Parth Enterprises, Inc.*, 2010 WL 2889490, at *2 (C.D. Cal. Jul.19, 2010) (quoting *Elektra Entertainment Group Inc. v. Bryant*, No. CV 03-6381 GAF (JTLx), 2004 WL 783123, at *1 (C.D. Cal. Feb.13, 2004)). The Ninth Circuit has directed that courts consider the following factors in deciding whether to enter default judgment:

> (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning the material facts; (6) whether defendant's default was the product of excusable neglect; and (7) the strong public policy favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir.1986).

**B.     Application of the *Eitel* Factors**

In the present case, the *Eitel* factors weigh in favor of entry of default judgment. Importantly, the second and third *Eitel* factors, which weigh the substantive merit of the plaintiff's claims and the sufficiency of the pleadings to support these claims, indicate that default judgment is appropriate in this case.

In order for these factors to weigh in favor of entering a default judgment, the plaintiff must state a claim upon which it may recover. *Pepsico*, 238 F. Supp. 2d at 1175; *see also Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978) (stating that the allegations in the complaint must state a claim upon which the plaintiffs may recover). 42 U.S.C. § 605 provides that:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S. § 605.

Here, Plaintiff's claim for a violation of 47 U.S.C. § 605 appears to have merit and states a valid claim. Specifically, Plaintiff has alleged that Defendants were not authorized to intercept and exhibit the Program, yet they did so at their commercial establishment, Roundtable Pizza, on October 24, 2009, without paying the requisite licensing fee. *See* Compl. ¶ 16. These allegations and supporting declarations state a claim for a violation of 47 U.S.C. § 605.[1]

Further, Plaintiff's conversion claim appears to have merit and the Complaint is sufficient to state a claim for conversion. Under California law, a claim for conversion has three elements: 1) ownership or right to possession of property; 2) wrongful disposition of the property right of another; and 3) damages. *See G.S Rasmussen & Assoc., Inc. v. Kalitta Flying Service, Inc.*, 958

---

[1] Although Plaintiff also states claims in the Complaint for a violation of 47 U.S.C. § 553 and a violation of California Business and Professions Code § 17200 *et. seq.*, damages are only sought in the present Motion for Default Judgment for the Defendants' violation of 47 U.S.C. § 605. Therefore, the Court need not reach the question of whether Plaintiff's claims based on 47 U.S.C. § 553 and California Business and Professions Code § 17200 have merit or whether the Complaint states a claim for violations of those sections.

F.2d 896, 906 (9th Cir. 1992).  Plaintiff alleges that it obtained the nationwide distribution rights for the Program, and that Defendants intentionally and unlawfully intercepted the Program and then wrongfully converted it for their own use and benefit.  Compl. ¶¶ 13-16.  Plaintiff further alleges that Defendants deprived Plaintiff of the license fee to which Plaintiff was entitled and would have received had Defendants obtained a license to broadcast the Program lawfully.  *See id.* ¶ 29.  Plaintiff explains that its "programming is not and cannot be mistakenly, innocently or accidentally intercepted."  Affidavit of Joe Hand ("Hand Aff.") at ¶ 9.  Therefore, this factor weighs in favor of granting a default judgment on Plaintiff's conversion claim.

The majority of the remaining *Eitel* factors also weigh in favor of granting default judgment.  First, if the Court were to deny the motion, Plaintiff will be left without a remedy given Defendants' failure to appear in, or otherwise defend this action.  *Pepsico, Inc. v. California Security Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).   Second, with regard to the possibility that material facts may be in dispute (*Eitel* 782 F.2d at 1471-72), Defendants have failed to respond in this action; thus, there is an absence of material facts in dispute in the record.  Third, there is no evidence in the record that Defendants' failure to appear and otherwise defend was the result of excusable neglect – Plaintiff has properly served the Defendants in this action, and they have failed to appear after being served with the Complaint, indicating that their failure to appear was willful.

One factor that weighs against the entry of default judgment is the amount at stake in the action.  Defendants seek the maximum amount available by statute.  *See* Riley Decl. ¶ 7.  These damages requests are disproportionate to the harm alleged.  This factor therefore weights against entry of default.  However, because the majority of the *Eitel* factors weigh in favor of granting default judgment, the Court will address the problems with the Plaintiff's damages request when making its damages recommendations below.  *See e.g.*, *J & J Sports Productions, Inc. v. Huezo*, C-09-4906 CW (EDL) (N.D. Cal. March 29, 2010).

The Court is also mindful of the *Eitel* factor that balances the policy consideration that whenever reasonably possible, cases should be decided upon their merits.  *Eitel*, 782 F.2d at 1472.  The existence of Rule 55(b) though, indicates that this preference towards disposing of cases on the merits is not absolute.  *Pepsico*, 238 F. Supp. 2d at 1177.  Here, because Defendants have failed to

1  respond or otherwise defend themselves in this action, deciding the case upon the merits is not
2  possible and this factor is therefore neutral.
3      As discussed above, the majority of the *Eitel* factors weigh in favor of granting the final
4  default judgment. Accordingly, it is recommended that default judgment be entered against the
5  Defendants on Plaintiffs' piracy and conversion claims.

### C.  DAMAGES

In a civil action under Section 605, the aggrieved party can recover actual damages, or statutory damages of not less than $1,000 or more than $10,000 for each violation, as the court "considers just." 47 U.S.C. § 605(e)(3)(C)(i)(I)-(II). "A traditional method of determining statutory damages is to estimate either the loss incurred by the plaintiff or the profits made by the defendants." *Joe Hand Promotions v. Kim Thuy Ho,* No. C09-01435 RMW (N.D. Cal. Sept.18, 2009) (citing cases).

In cases where the court finds that the violation was committed "willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation." 47 U.S.C. § 605(e)(3)(C)(ii). The Court shall award full costs, including reasonable attorney's fees, to an aggrieved party that prevails. 47 U.S.C. § 605(e)(3)(B)(iii). Courts typically consider the following factors in determining whether a defendant's willful conduct justifies an award of enhanced damages: "repeated violations over an extended period of time; substantial unlawful monetary gains; significant actual damages to plaintiff; defendant's advertising for the intended broadcast of the event; defendant's charging a cover charge or charging premiums for food and drinks." *Kingvision Pay-Per-View, Ltd. v. Recio*, 2003 WL 21383826, at *5 (S.D.N.Y. June 11, 2003) (internal citations omitted). Plaintiff argues that it is entitled to the maximum statutory damages of $10,000[2] for Defendants' interception and

---

[2] *See, e.g., J & J Sports Productions, Inc. v. Flores*, 2009 U.S. Dist. LEXIS 54676, at *4 (E.D. Cal. June 26, 2009) (awarding $10,000 in damages under 47 U.S.C. § 605 where between thirty-three and thirty-five people were present during the broadcast, and there was no cover charge, but not stating whether the award was for statutory damages alone or whether also included enhanced damages); *Joe Hand Promotions, Inc. v. Tidmarsh*, 2009 U.S. Dist. LEXIS 54412, at *10 (E.D. Cal. June 26, 2009)

6

exhibition of the Program, as well as the "enhanced" statutory maximum of $100,000, for a total of $110,000, arguing that because Roundtable Pizza is a commercial establishment, it could only have obtained the Program lawfully if Defendants had contracted with Plaintiff for the rights to show it. Motion at 4.  There is no evidence before the Court that Defendants are multiple offenders, nor is there evidence before the Court of the method of interception used by Defendants here.

The Court declines to award the statutory maximum sought by Plaintiff here.  As explained persuasively by the District Court in another case with very similar facts, "[s]everal courts in this district, however, have found that an award of the statutory *minimum* is appropriate where, among other things, 'events are broadcast on a single occasion to a small audience, and the plaintiff produces little or no evidence of financial gain.'"" *J&J Sports Productions Inc. v. Huezo, et al.*, C-09-4906 CW (Order adopting Report and Recommendation, July 2, 2010) (emphasis added) (*citing Universal Sports Network, Inc. v. Jimenez,* 2002 U.S. Dist. LEXIS 17709, *3 (N.D. Cal. Sept. 17, 2002) ("The courts typically have evaluated the extent to which the plaintiff demonstrated the defendant's intent to use the broadcast to realize personal gain, whether the acts of piracy were repeated, and the extent of the rebroadcast. Where events were broadcast on a single occasion to a small audience, and the plaintiff produces little or no evidence of financial gain, courts typically have awarded only the $ 1,000 statutory minimum.")); *see also e.g., J & J Sports Prods. v. Medinarios*, 2008 U.S. Dist. LEXIS 79668, *8 (N.D. Cal. Sept. 25, 2008) (awarding $1,000 in statutory damages in case where the defendant played a boxing match in violation of 47 U.S.C. § 605; there were only thirty-five customers in the establishment, no cover charge, no advertising, no increase in cost of beverages, and no evidence that the customers were there solely for the boxing

---

(awarding $10,000 in statutory damages under 47 U.S.C. § 605 where the defendant's establishment had a maximum capacity of fifty people, there were between twenty-three and twenty-nine people there during the  broadcast, and there were two televisions); *J & J Sports Productions, Inc. v. Esquivel*, 2008 U.S. Dist. LEXIS 92140, *9. (E.D. Cal. Oct. 20, 2008) (awarding $10,000 in statutory damages under 47 U.S.C. § 605 where the defendant's establishment had a maximum capacity of seventy-five people, there were thirty-five people there during the broadcast, and there was one television); *J & J Sports Productions, Inc. v. George*, 2008 U.S. Dist. LEXIS 85770, *5 (E.D. Cal. Sept. 12, 2008) (awarding $10,000 in damages under 47 U.S.C. § 605 where the defendant's establishment had a maximum capacity of thirty people, there were between eighteen and twenty people there during the broadcast, there was one television and there was no cover charge, but not stating whether the award was for statutory damages alone or whether it also included enhanced damages).

match and no evidence that the defendant was a repeat offender); *Garden City Boxing Club, Inc. v. Zavala*, 2008 U.S. Dist. LEXIS 79647, *4 (N.D. Cal. Aug. 18, 2008) (awarding $1,000 in statutory damages where the broadcast was made to twenty-four customers who did not pay a cover charge); *Garden City Boxing Club, Inc. v. Tran*, 2006 U.S. Dist. LEXIS 71116, *5, *7 (N.D. Cal. Sept. 20, 2006) (awarding $1,000 in statutory damages in case where the defendant broadcast a boxing match in violation of 47 U.S.C. § 605; the defendant charged a ten dollar cover fee to forty customers present during the telecast; but there was no evidence that the defendant was a repeat offender or that the defendant engaged in any advertising); *Kingvision Pay-Per-View, Ltd. v. Backman*, 102 F. Supp. 2d 1196, 1198-99 (N.D. Cal. 2000) (awarding $1,000 in statutory damages where the defendant played a boxing match in violation of 47 U.S.C. § 605; there were only sixteen customers in the establishment, there was no evidence that the defendant advertised the match or that a premium was charged for food and drink, there was no cover charge, no evidence that the patrons were in the establishment solely for the match, and no evidence that the defendant was a repeat offender).

Here, there is no evidence that Defendants received significant financial benefits. The investigator, Mr. Aal declares that Defendants broadcasted the Program on one television at the back of the establishment. *See* "Declaration of Affiant" at 1. Mr. Aal indicates that the occupancy capacity of Defendants' establishment is approximately 60 people, and that there were between 41 and 50 people present while he was there. *Id.* There has been no showing that Defendants advertised the Program to attract patrons, or that any patrons in Roundtable Pizza were there solely to view the Program. There was no cover charge and no showing that the cost of beverages was increased during the game. There has been no showing that Defendants have been held liable for signal piracy before.

Because Defendants are first time offenders in this case, and have not been shown to have benefitted financially, the Court finds it appropriate to award damages in an amount closer to the minimum statutory damages amount, not the maximum amount sought by Plaintiff here. As there is no evidence of how much Defendants made during the unlawful exhibition of the Program, the Court shall base statutory damages on the cost of the commercial license, or $875. Accordingly,

the Court recommends an award of $1,000 in statutory damages pursuant to 47 U.S.C.  Section 605(e)(C)(i)(II).

With respect to enhanced damages, the Court concludes that enhanced damages are appropriate given the impossibility that Plaintiff's signal could be innocently or accidentally intercepted. *See* Declaration of Joe Hand, Jr. ¶ 9.  The Court declines, however, to recommend an award of the maximum amount of enhanced damages or $100,000 as requested by Plaintiff.

As Plaintiff acknowledges, courts in the Northern District have awarded less than the maximum amount of enhanced damages in cases with facts similar to the present case, concluding that "an establishment that does not promote itself by advertising the Program, does not assess a cover charge, and does not charge a special premium for food and drinks hardly seems like the willful perpetrators envisioned by the statute's framers." *See Medinarios*, 2008 U.S. Dist. LEXIS 79668, at *8 (awarding $5,000 in enhanced damages); *Zavala,* 2008 U.S. Dist. LEXIS 79647, *4 (awarding $5,000 in enhanced damages); *Tran*, 2006 U.S. Dist. LEXIS 71116, *7 (awarding $5,000 in enhanced damages); *Jimenez*, 2002 U.S. Dist. LEXIS 17709, *4 (declining to award enhanced damages where the plaintiff does not allege repeated violations, there was no advertisement, no charged cover, and the match was shown to twenty-one patrons); *Backman*, 102 F. Supp. 2d at 1198 n. 2 (declining to award enhanced damages because while an absence of cover charge may be more injurious to Plaintiff's business, the absence can also be interpreted as a lack of willfulness).

Even the cases cited by Plaintiff in which enhanced damages were awarded, the courts did not award the statutory maximum (as requested here), and in some cases, it is difficult to determine the exact amount of enhanced damages that the courts awarded.  *See, e.g., Joe Hand Prods. v. Haddock*, 2009 U.S. Dist. LEXIS 63048, *5 (E.D. Cal. July 14, 2009) (recommending an award of $25,000 in total damages pursuant to 47 U.S.C. § 605, but not stating how much of the amount was enhanced damages)*; Kingvision Pay-Per-View, Ltd. v. Gutierrez*, 544 F. Supp. 2d 1179, 1185 (D. Colo. 2008) (awarding $15,000 in enhanced damages where the interception of signal was willful, but there was no evidence of prior violations, no evidence of significant earnings by the defendant, the loss of revenue by the plaintiff for one establishment was minimal, there was no evidence of advertising, and no evidence that the establishment charged a premium for food and drink); *Garden City Boxing Club, Inc. v. Frezza*, 476 F. Supp. 2d 135, 139-140 (D. Conn. 2007) (awarding $10,000

in enhanced damages for the willfulness of the defendant's actions, taking into account awards granted by other courts in the same district, even though there was no evidence of prior illegal conduct or lost revenue and the monetary benefit obtained by defendant was minimal).

Further, an award of the statutory maximum is rare. In fact, Plaintiff does not cite a single case to this Court where a court has awarded $110,000 for a single violation of 47 U.S.C. § 605. The cases the Court was able to find in which such a sizable amount was awarded do not necessarily support Plaintiff's damages request here because the reasons for the large damages awards are not readily apparent from the courts' opinions. *See e.g., J & J Sports Prods. v. Ferreyra*, 2008 U.S. Dist. LEXIS 75840, *3 (E.D. Cal. Aug. 26, 2008) (recommending an award of $100,000 without analysis of the facts of the case except that the defendant had been sued in another action for commercial signal piracy); *J & J Sports Prods. v. Lang*, 2008 U.S. Dist. LEXIS 112054, *3 (W.D.N.Y. July 22, 2008) (awarding $100,000 in enhanced damages without any analysis of the facts of the case justifying that amount); *Kingvision Pay-Per-View, Ltd. v. Guerra*, 2007 U.S. Dist. LEXIS 98667, *4 (S.D. Tex. Oct. 12, 2007) (awarding $50,000 in enhanced damages without discussing specific facts of the case).

The Court finds that the facts in the present case justify an award of some enhanced damages because Defendants acted willfully in intercepting and broadcasting the Program, (*see* Hand Decl., ¶ 9) and displayed the broadcast on a large television monitor to approximately 50 people. Defendants did not impose a cover charge, and there has been no evidence submitted regarding whether Defendants advertised the Program or charged a premium for food and drinks. Further, Plaintiff has submitted no evidence of prior violations by these Defendants. However, because the act of intercepting programming requires an affirmative act by Defendants to do so, and in order to deter future willful violations, the Court recommends an enhanced damages award in the amount of $5,000. Such an award adequately addresses the willfulness of Defendants' illegal conduct and should serve as a deterrent for future violations. *See e.g., Kingvision Pay-Per-View, Ltd. v. Gutierrez*, 544 F.Supp.2d 1179, (D. Colo. 2008) (rejecting plaintiff's request for $100,000 and awarding $5,000 in statutory damages and $15,000 in enhanced damages in order to deter future illegal conduct where no aggravating factors exist).

Plaintiff also seeks damages for its conversion claim in the amount of $875.00, which is the amount Defendants would have been required to pay had they licensed the Program from Plaintiff. *See* Plaintiff's Aff. ¶ 8. This amount of damages for conversion is appropriate under California Civil Code section 3336. *See* Cal. Civ. Code § 3336 ("The detriment caused by the wrongful conversion of personal property is presumed to be: First --The value of the property at the time of the conversion, with the interest from that time, or, an amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of and which a proper degree of prudence on his part would not have averted.").

Accordingly, the Court recommends awarding Plaintiff $875.00 in damages for conversion.

## IV. CONCLUSION

The Court recommends granting Plaintiff's Motion for Default Judgment and awarding Plaintiff: 1) $1,000 in statutory damages; 2) $5,000 in enhanced statutory damages, and 3) $875.00 for conversion. Plaintiff has not sought his attorneys' fees or costs, so none should be awarded.

Any party may serve and file specific written objections to this recommendation within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72(b); Civil Local Rule 72-3. Failure to file objections within the specified time may waive the right to appeal the District Court's Order.

IT IS SO ORDERED.

Dated: April 22, 2011

_____
JOSEPH C. SPERO
United States Magistrate Judge

11